# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

UNITED STATES OF AMERICA,       )
                                               )

                      Plaintiff,     )
                                               )

                         v.         )        1:15CV506

$39,956.45 IN U.S. CURRENCY SEIZED )
FROM BANK OF NORTH CAROLINA )
ACCOUNT ENDING IN 3974, IN THE )
NAME OF RD JESSUP PROPERTIES, )
LLC, et al., )

                   Defendants.   )

---

UNITED STATES OF AMERICA,       )

                      Plaintiff,     )

                         v.         )        1:15CV152

6407 MONNETT ROAD, CLIMAX, )
GUILFORD COUNTY, NORTH )
CAROLINA, WITH ALL )
APPURTENANCES AND )
IMPROVEMENTS THEREON, et al., )

                   Defendants.   )

---

In the Matter of the Seizure of )
All funds on deposit at Bank of North Carolina )   Case No.: 1:15MJ32
in the account ending in number xx3974, )
in the name of RD Jessup Properties )

In the Matter of the Seizure of      )
L4600 Kubota DT 4x4 Tractor     )     Case No.: 1:15MJ33

In the Matter of the Seizure of      )
All funds on deposit at Bank of North Carolina  )
in the account ending in number xx3044,  )     Case No.: 1:15MJ34
in the name of Gate City Transportation  )

In the Matter of the Seizure of      )
All funds on deposit at First Citizens Bank  )
in the account ending in number xx8448,  )     Case No.: 1:15MJ35
in the name of Gate City Transportation  )

In the Matter of the Seizure of      )
All funds on deposit at Bank of North Carolina  )
in the account ending in number xx9565,  )     Case No.: 1:15MJ36
in the name of C.D. and Roderick D. Jessup  )

In the Matter of the Seizure of      )
All funds on deposit at First Citizens Bank  )
in the account ending in number xx7104,  )     Case No.: 1:15MJ37
in the name of Gate City Transportation  )

In the Matter of the Seizure of      )
2012 Ford F-250,  )
VIN 1FT7W2BT0CEC48613  )     Case No.: 1:15MJ38

In the Matter of the Seizure of      )
All funds on deposit at Bank of North Carolina  )
in the account ending in number xx4148,  )     Case No.: 1:15MJ40
in the name of Roderick D. Jessup  )

In the Matter of the Seizure of      )
All funds on deposit at First Citizens Bank  )
in the account ending in number xx0396,  )     Case No.: 1:15MJ41
in the name of Roderick Jessup  )

In the Matter of the Seizure of      )
All funds on deposit at Bank of North Carolina  )
in the account ending in number xx8627,  )     Case No.: 1:15MJ42
in the name of Roderick D. Jessup  )

| | | |
|---|---|---|
| In the Matter of the Seizure of | ) | |
| Funds up to $11,200.00 on deposit at | ) | Case No.: 1:15MJ43 |
| Bank of North Carolina in the account | ) | |
| ending in xx5185, in the name of | ) | |
| Gate City Transp., Sickle Cell Gala account | ) | |

| | | |
|---|---|---|
| In the Matter of the Seizure of | ) | |
| 2014 BMW X5, | ) | Case No.: 1:15MJ44 |
| VIN 5UXKR6C51E0J73461 | ) | |

| | | |
|---|---|---|
| In the Matter of the Seizure of | ) | |
| All funds on deposit at Bank of North Carolina | ) | Case No.: 1:15MJ45 |
| in the account ending in number xx2413, | ) | |
| in the name of Gate City Transportation | ) | |

| | | |
|---|---|---|
| In the Matter of the Seizure of | ) | |
| 2014 Ford Econoline, | ) | Case No.: 1:15MJ49 |
| VIN 1FTNS2EW9EDA12267 | ) | |

| | | |
|---|---|---|
| In the Matter of the Seizure of | ) | |
| 2013 Ford E350 Econoline, | ) | Case No.: 1:15MJ50 |
| VIN 1FBSS3BL3DDA64659 | ) | |

| | | |
|---|---|---|
| In the Matter of the Seizure of | ) | |
| 2012 Ford E350 Econoline, | ) | Case No.: 1:15MJ51 |
| VIN 1FBSS3BL1CDA76632 | ) | |

| | | |
|---|---|---|
| In the Matter of the Seizure of | ) | |
| 2012 Ford E250 Econoline, | ) | Case No.: 1:15MJ52 |
| VIN 1FTNS2EW9CDA21161 | ) | |

| | | |
|---|---|---|
| In the Matter of the Seizure of | ) | |
| 2012 Ford E250 Cargo Van, | ) | Case No.: 1:15MJ53 |
| VIN 1FTNS2EW0CDB20984 | ) | |

| | | |
|---|---|---|
| In the Matter of the Seizure of | ) | |
| 2011 Ford E350 XLT – 15 passenger, | ) | Case No.: 1:15MJ54 |
| VIN 1FBSS3BL8BDA98092 | ) | |

| | | |
|---|---|---|
| In the Matter of the Seizure of | ) | |
| 2012 Ford E250 Econoline, | ) | Case No.: 1:15MJ55 |
| VIN 1FTNS2EW4DDA39018 | ) | |

| | | |
|---|---|---|
| In the Matter of the Seizure of<br>2012 Ford E350 Econoline,<br>VIN 1FBSS3BL7CDA76599 | )<br>)<br>) | Case No.: 1:15MJ56 |
| In the Matter of the Seizure of<br>2012 Ford E250 Econoline,<br>VIN 1FTNS2EW5CDB14646 | )<br>)<br>) | Case No.: 1:15MJ57 |
| In the Matter of the Seizure of<br>2012 Ford E250 Econoline,<br>VIN 1FTNS2EWXCDB18059 | )<br>)<br>) | Case No.: 1:15MJ58 |
| In the Matter of the Seizure of<br>2013 Bus, VIN 1FDEE3FS8DDB04800 | )<br>) | Case No.: 1:15MJ59 |
| In the Matter of the Seizure of<br>2001 Chance 22 Seat Trolley,<br>VIN 1C9S2HFS51W535229 | )<br>)<br>) | Case No.: 1:15MJ60 |
| In the Matter of the Seizure of<br>2001 Chance 22 Seat Trolley,<br>VIN 1C9S2HFS31W535228 | )<br>)<br>) | Case No.: 1:15MJ61 |
| In the Matter of the Seizure of<br>2011 Ford Crown Victoria,<br>VIN 2FABP7EV6BX128657 | )<br>)<br>) | Case No.: 1:15MJ62 |
| In the Matter of the Seizure of<br>2011 Ford E350 Econoline,<br>VIN 1FBSS3BL3BDB37395 | )<br>)<br>) | Case No.: 1:15MJ63 |
| In the Matter of the Seizure of<br>2013 Ford E250 Econoline,<br>VIN 1FTNS2EW0DDA08297 | )<br>)<br>) | Case No.: 1:15MJ64 |
| In the Matter of the Seizure of<br>2013 Bus, VIN 1FDEE3FS3DDB37400 | )<br>) | Case No.: 1:15MJ65 |
| In the Matter of the Seizure of<br>2011 Ford E250 Econoline,<br>VIN 1FTNS2EW3BDB23859 | )<br>)<br>) | Case No.: 1:15MJ66 |

| | | |
|---|---|---|
| In the Matter of the Seizure of<br>2013 Ford E250 Econoline,<br>VIN 1FTNS2EW2DDA08298 | )<br>)<br>) | Case No.: 1:15MJ67 |
| In the Matter of the Seizure of:<br>2013 Ford E350 Econoline,<br>VIN 1FBSS3BL9DDA61510 | )<br>)<br>) | Case No.: 1:15MJ68 |
| In the Matter of the Seizure of<br>2013 Ford E350 Econoline,<br>VIN 1FBSS3BL4DDA61379 | )<br>)<br>) | Case No.: 1:15MJ69 |
| In the Matter of the Seizure of<br>2013 Ford E350 Econoline,<br>VIN 1FBSS3BL9DDA71342 | )<br>)<br>) | Case No.: 1:15MJ70 |
| In the Matter of the Seizure of<br>2012 Ford E350 Econoline,<br>VIN 1FBSS3BL8CDA98935 | )<br>)<br>) | Case No.: 1:15MJ71 |
| In the Matter of the Seizure of<br>2013 Ford E250 Cargo Van,<br>VIN 1FTNS2EW0DDA30199 | )<br>)<br>) | Case No.: 1:15MJ72 |
| In the Matter of the Seizure of<br>2011 Ford E350 XLT – 15 passenger,<br>VIN 1FBSS3BL8BDB10418 | )<br>)<br>) | Case No.: 1:15MJ73 |
| In the Matter of the Seizure of<br>2011 Ford E250 Econoline,<br>VIN 1FTNS2EW0BDB29571 | )<br>)<br>) | Case No.: 1:15MJ74 |
| In the Matter of the Seizure of<br>2011 Ford Crown Victoria,<br>VIN 2FABP7EV5BX149676 | )<br>)<br>) | Case No.: 1:15MJ75 |
| In the Matter of the Seizure of<br>2013 Ford E350 Econoline,<br>VIN 1FBSS3BLXDDA56042 | )<br>)<br>) | Case No.: 1:15MJ76 |
| In the Matter of the Seizure of<br>2014 Trailer, VIN 5VGFG2421EL002571 | )<br>) | Case No.: 1:15MJ77 |

| In the Matter of the Seizure of | ) | |
| --- | --- | --- |
| 2013 Ford E350 Econoline, | ) | Case No.: 1:15MJ78 |
| VIN 1FBSS3BL6DDA73811 | ) | |

| In the Matter of the Seizure of | ) | |
| --- | --- | --- |
| 2013 Ford E350 Econoline, | ) | Case No.: 1:15MJ79 |
| VIN 1FBSS3BL6DDA73923 | ) | |

| In the Matter of the Seizure of | ) | |
| --- | --- | --- |
| 2012 Ford E350 Econoline, | ) | Case No.: 1:15MJ80 |
| VIN 1FBSS3BL0CDA76797 | ) | |

| In the Matter of the Seizure of | ) | |
| --- | --- | --- |
| 2012 Ford E350 Econoline, | ) | Case No.: 1:15MJ81 |
| VIN 1FBSS3BL9CDA97194 | ) | |

| In the Matter of the Seizure of | ) | |
| --- | --- | --- |
| 2012 Ford E350 Econoline, | ) | Case No.: 1:15MJ82 |
| VIN 1FBSS3BL9CDA58556 | ) | |

| In the Matter of the Seizure of | ) | |
| --- | --- | --- |
| 2011 Ford E350 EXL – 15 passenger, | ) | Case No.: 1:15MJ83 |
| VIN 1FBSS3BL4BDB11002 | ) | |

| In the Matter of the Seizure of | ) | |
| --- | --- | --- |
| 2012 Ford E350 Econoline, | ) | Case No.: 1:15MJ84 |
| VIN 1FBSS3BL5CDA76682 | ) | |

| In the Matter of the Seizure of | ) | |
| --- | --- | --- |
| 2014 Ford E350 Econoline, | ) | Case No.: 1:15MJ85 |
| VIN 1FTSS3EL8EDA59837 | ) | |

## ORDER AND RECOMMENDATION OF
## UNITED STATES MAGISTRATE JUDGE

These cases involve civil forfeiture proceedings brought against certain real property (1:15CV152) and certain personal property (1:15CV506). In both cases, the Government brought a civil action for the forfeiture of properties involved in or which constitute or were derived from proceeds traceable to specified unlawful activity, based on alleged Medicaid fraud

involving Roderick D. Jessup ("Jessup") and his business, Gate City Transportation, Inc. ("GCT"). See 18 U.S.C. § 981(a)(1)(A),(C). The personal property at issue in 1:15CV506 was originally seized pursuant to seizure warrants in Case Numbers 1:15MJ32 to 1:15MJ38, 1:15MJ40 to 1:15MJ45, and 1:15MJ49 through 1:15MJ85, and Jessup and GCT filed Motions for the Return of Seized Property in those cases. Jessup and GCT, as well as other related entities (RD Jessup Properties, LLC, Gate City Trolley, LLC, and 324 Investments, LLC) (collectively, "Movants") also filed Motions to Dismiss the civil forfeiture cases 1:15CV152 [Doc. #10] and 1:15CV506 [Doc. #9]. Movants contend that the Government failed to make service as required, failed to prosecute the forfeiture cases, and unnecessarily prolonged the forfeiture proceedings, in violation of the Constitution and the Federal Rules of Civil Procedure. Plaintiff United States of America responded to the Motions and also filed a Motion to Stay Proceedings in the civil forfeiture cases, contending that the Court should stay the civil forfeiture proceedings in order to avoid interfering with the ongoing criminal investigation into Movants' alleged fraudulent activity.

The Court held a hearing on these Motions on August 24, 2016. At the hearing, the Court noted that it appeared that the Government's request for a stay should be granted, and also noted that there did not appear to be a basis to dismiss the proceedings on the present record. Movants recently filed a Motion to Lift Stay, which the Court has considered. Having considered the Motion to Lift Stay, the Court concludes that the matters should remain stayed, but that the Government should be required to file an updated status report within 10 days of this Order, setting out a sufficient basis for continuing the stay, and further filing a similar update every 90 days thereafter. Movants may file a renewed Motion to Lift Stay in response

to any such filing, for further consideration by the Court.  In addition, the Court will enter this

Order setting out its findings for the record, including the Recommendation that the Motions

to Dismiss and Motions to Return Property be denied.[1]

I.      FACTS, CLAIMS, AND PROCEDURAL HISTORY

Roderick Jessup established Gate City Transportation ("GCT") in the 1990s to provide

non-emergency medical transportation services.   In 2008, GCT began seeking Medicaid

reimbursement for its transportation services.   In 2014, the North Carolina Medicaid

Investigations Division began an investigation into GCT's business practices.  According to

the Government, further investigation indicated that GCT, which did not provide ambulance

services, was submitting claims for Medicare and Medicaid reimbursement using billing codes

for ambulance transportation, in some instances with additional coding claiming that basic life

support services were provided.  The Government contends that GCT did not use stretcher

vans or other equipment necessary to perform ambulance transportation as defined under

Medicare and Medicaid regulations; instead, the investigation indicated that GCT used

passenger vans, without the requisite equipment or emergency medical personnel.   The

Government notes that Medicare and Medicaid do not provide reimbursement for

transportation services other than by ambulance.  The Government further alleges that during

2013, state officials had conversations with GCT's Business Manager and with Charlynn

Dawson at GCT, specifically advising GCT that Medicaid could only be billed for ambulance

transportation for bed-confined recipients, not non-emergency transportation by passenger

---

[1] However, as noted during the hearing, Movants may elect to withdraw the Motions to Return Property and
Motions to Dismiss without prejudice rather than proceeding on the Recommendation at this time.

8

van, and that GCT should not be billing Medicaid for ambulance transportation services. (Resp. to Mot. for Return of Prop. at 21-23.) The Government contends that GCT nevertheless provided its third-party biller with the ambulance transportation codes to continue to submit the claims to Medicaid. (Id.) Thus, the Government alleges that GCT was fraudulently billing for ambulance transportation and life support services that it did not provide. The Government also alleges that GCT submitted claims for multiple separate ambulance trips when multiple passengers were transported at once. (Id. at 25.) That is, the Government contends that, for example, when a passenger van was used to take ten individuals to a medical appointment, GCT billed Medicaid for ten separate ambulance trips, include mileage for ten trips, when in fact there was only one trip and it was not by ambulance and would not have qualified for any Medicaid reimbursement. Government investigators estimate that from January 1, 2011 through February 10, 2015, GCT submitted over $25 million in fraudulent claims to the North Carolina Medicaid Program and $2,513.96 in fraudulent claims to Medicare. (Id. at 23-24.)

Based on affidavits setting out the evidence supporting these contentions, seizure warrants issued in February 2015 in cases 1:15MJ32 to 1:15MJ38, 1:15MJ40 to 1:15MJ45, and 1:15MJ49 through 1:15MJ85. The warrants allege that GCT engaged in Health Care Fraud in violation of 18 U.S.C. § 1347, False Claims in violation of 18 U.S.C. § 287, and money laundering in violation of 18 U.S.C. § 1957. Additional seizure warrants were issued in March 2015. As a result, agents seized GCT's vehicles, certain bank accounts, and Jessup's personal property traceable to GCT's accounts, including various items of jewelry. The executed warrants reflect that copies of the seizure warrants were provided to Jessup or his attorney, or

to the bank for the accounts themselves. In addition, in February 2015, the Government filed a civil forfeiture complaint against Jessup's real property, civil case 1:15CV152. Within a week after the Complaint was filed in that civil forfeiture case, the Government provided the Complaint to Jessup's counsel and an electronic copy of the Complaint was ultimately forwarded to Jessup's accounting and consulting firm.

On June 26, 2015, the Government filed a Verified Complaint for Forfeiture against the personal property in civil case 1:15CV506. The action sought forfeiture of the personal property that was previously seized pursuant to the seizure warrants.[2] The Complaint was not filed under seal. The Government also applied for a warrant for arrest <u>in rem</u> and submitted an affidavit for review by the Court. On September 4, 2015, the Court requested additional information to support issuance of the warrant, particularly with respect to tracing the source of funds in certain accounts. On November 10, 2015, the Government responded to the request by amending the Complaint and Application for Warrant for Arrest of Personal Property, and on November 13, 2015, this Court issued the Forfeiture Warrant upon a finding of probable cause to believe that the defendant personal properties were subject to forfeiture. The Forfeiture Warrant directed the United States Marshals Service or other authorized federal law enforcement agent to arrest the defendant personal property and give "notice as provided in Rule G(4) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions by (1) publication to the extent required by Rule G(4); and (2) sending notice of the pending forfeiture to all persons who reasonably appear to have an interest in or rights against the property."

---

[2] The civil forfeiture action also includes personal property that was seized in 1:15MJ103 to 1:15MJ114.

In October and November 2015, counsel for Jessup engaged in e-mail exchanges with counsel for the Government regarding the status of the criminal investigation and the seizure of certain assets. Movants now contend that the Government failed to inform them of the filing of the civil forfeiture proceeding as to the personal property, and that the failure to do so was for the intended purpose of interfering with Movants' rights and gaining an unfair advantage. However, in response, the Government notes that the e-mail exchange was focused on a specific issue regarding the seizure of a particular account and the bank's efforts to reverse automatic payroll payments made to GCT employees after the account had been seized.

Several months later, on April 1, 2016, Movants petitioned the Court for return of their property in 1:15MJ32 to 1:15MJ38, 1:15MJ40 to 1:15MJ45, and 1:15MJ49 through 1:15MJ85. Those Motions for Return of Property are before the Court.

Shortly after the filing of the Motions for Return of Property, on April 5, 2016, the Government sent counsel for Movants notice of the Complaint in 1:15CV152 and notice of the Complaint, Amendment to Complaint, and Warrant of Arrest in Rem in 1:15CV506. In addition, Notice of Civil Forfeiture for the personal property was posted on an official government internet site beginning on April 5, 2016, and ending on May 4, 2016. On April 18, 2016, Movants filed their Motions to Dismiss the forfeiture actions in 1:15CV152 and 1:15CV506. Following briefing of those Motions, the Motions were set for a hearing for August 24, 2016. Prior to the hearing, on July 27, 2016, Plaintiff filed a Motion to Stay Proceedings pending the resolution of the related criminal investigation and any resulting prosecution. All of the matters were heard on August 24, 2016, and the Court noted that it

appeared that the Government's request for a stay should be granted and that there did not appear to be a basis to dismiss the proceedings, but the Court did not enter a formal Recommendation at that time. Movants recently filed a Motion to Lift Stay. The Court's findings as to all of these Motions are set out below.

## II. DISCUSSION

### A. Motions for Return of Property

As noted above, Movants first filed Motions for the Return of Seized Property, pursuant to Rule 41(g) of the Federal Rules of Criminal Procedure, on April 1, 2016 in 1:15MJ32 to 1:15MJ38, 1:15MJ40 to 1:15MJ45, and 1:15MJ49 through 1:15MJ85. The Government timely filed a response in opposition to Movants' motions. Having considered the filings, and as discussed at the hearing, Movants' Rule 41(g) Motions are not the appropriate vehicle through which to pursue the relief Movants seek. Accordingly, this Court recommends that Movants' Motions for Return of Property should be denied.

In relevant part, Rule 41(g) provides: "A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return." Fed. R. Crim. P. 41(g). In circumstances where the Government has not filed criminal charges against a claimant, a claimant's Rule 41(g) motion is treated as a petition to the district court to exercise its civil equitable jurisdiction. Ramsden v. United States, 2 F.3d 322, 324 (9th Cir. 1993); Floyd v. United States, 860 F.2d 999, 1002-03 (10th Cir. 1988). When determining whether to entertain a Rule 41(g) motion for return of property filed prior to the initiation of criminal proceedings, many courts have adopted a four-factor test (herein called the "Richey factors") seeking to balance:

> (1) whether the Government displayed a callous disregard for the constitutional rights of the movant;
> (2) whether the movant has an individual interest in and need for the property he wants returned;
> (3) whether the movant would be irreparably injured by denying return of the property; and
> (4) whether the movant has an adequate remedy at law for the redress of his grievance.

See Ramsden, 2 F.3d at 325 (citing Richey v. Smith, 515 F.2d 1239, 1243 (5th Cir. 1975)).  A district court should use "caution and restraint" when deciding whether to exercise equitable jurisdiction under Rule 41(g), and the claimant's motion should be dismissed if the clamant has an adequate remedy at law or cannot show irreparable injury.  Frazee v. I.R.S., 947 F.2d 448, 449 (10th Cir. 1991) (citing Floyd, 860 F.2d at 1003).

Here, the Government has instituted forfeiture proceedings, and Movants have filed a Motion to Dismiss in the related forfeiture proceeding, as will be discussed more fully below. See Frazee, 947 F.2d at 450 (noting that, because claimant could challenge the legality of the seizure of property in a judicial forfeiture action, claimants had an adequate remedy at law under Rule 41(g), therefore depriving the court of equitable jurisdiction).  As discussed during the hearing, the substance of Movants' contentions can be considered as part of the Motion to Dismiss, including with respect to Movants' constitutional arguments.  Thus, Movants have an adequate remedy at law, and there is no need or basis for this Court to exercise equitable jurisdiction under Rule 41(g).

Moreover, even if the Court were to consider the equities, the remaining Richey factors would not weigh in favor of relief here.  Movants have failed to show that the Government

has exhibited a "callous disregard" towards Movants' constitutional rights.[3]  The Government obtained a seizure warrant for each piece of property before the property was seized, and subsequently filed a civil forfeiture proceeding and obtained an additional warrant for the personal property as part of that proceeding.  The Government's warrant applications were supported by detailed affidavits from investigating agents establishing probable cause to believe that the seized assets are traceable, in their entirety, to a scheme to defraud Medicaid. In addition, the Government has presented evidence of the ongoing criminal investigation and the basis for the continued seizure of the property, and Movants have made no attempt to show that the Government's reasonable law enforcement interests could be satisfied after returning the property.  See Fed. R. Crim. P. Advisory Comm. Notes to 1989 Amendments (noting that for purposes of the Fourth Amendment analysis, "[i]f the United States has a need for the property in an investigation or prosecution, its retention of the property generally is reasonable").

Movants contend that they have a need for the property seized and have suffered irreparable injury because "Gate City does not have sufficient capital with which to operate, to pay its debts, maintain its equipment and vehicles, pay its employees or to otherwise exist as a transportation company."  However, the Government notes that 99% of GCT's revenues came from the Medicaid billings, which GCT would not be entitled to continue in any event. Moreover, "irreparable harm" in the Rule 41(g) context refers to circumstances in which a movant "cannot wait for a legal remedy, thus justifying the Court's equitable jurisdiction."

---

[3] To the extent that Movants contend that the Government failed to timely initiate a civil forfeiture action or provide notice of the action, and that this amounted to a violation of Movants' Fifth Amendment right to due process, this argument is discussed below in analyzing Movants' Motion to Dismiss.

<u>Floyd</u>, 860 F.2d at 1006.  Here, Movants' contentions can be addressed in the forfeiture proceeding, as discussed above, and thus would not amount to irreparable harm in the Rule 41(g) context.

In sum, the Motions for Return of Property should be denied because the proper forum for addressing Movants' contentions is in the civil forfeiture proceeding, rather than on a motion pursuant to Rule 41(g).  Moreover, considering the Rule 41(g) equitable analysis, the equities do not weigh in favor of granting Movant's request.[4]

B.    Movants' Motions to Dismiss

On April 18, 2016, Movants filed Motions to Dismiss in 1:15CV152 and 1:15CV506 seeking dismissal of the forfeiture proceedings as to all of the real and personal property, arguing that Federal Rules of Civil Procedure 12(b)(5) and 41(b) warranted dismissal of the Government's Complaint in its entirety in each case.  In addition, Movants also raise alleged violation of the Fifth Amendment Due Process Clause and Supplemental Rule G of the Federal Rules of Civil Procedure.  For the reasons that follow, this Court recommends denying Movants' Motions to Dismiss.

(i) Failure to Prosecute under Federal Rule of Civil Procedure 41(b)

Movants first argue that the Government's action against the Defendant properties should be dismissed for failure to prosecute under Federal Rule of Civil Procedure 41(b).  Under Rule 41(b), a court has the discretion to dismiss a complaint with prejudice when a

---

[4] Movants also argue that the Government's delay in this case violated the "Letter of Department of Justice and IRS Policy."  Movants do not point to any direct violations of IRS or Department of Justice policy, instead arguing that the Government's actions in this case amount to a violation of the "spirit" of these policies and the best practices for Government attorneys encouraged therein.  In any event, neither of the policy manuals that Movants cite are binding authority on this Court.

plaintiff fails to prosecute the complaint, fails to follow the federal rules, or fails to follow court orders. Fed. Rule Civ. P. 41(b). The plain text of Rule 41(b) suggests that the Rule applies only to "plaintiff[s]" and "defendant[s]," therefore appearing to exclude <u>in rem</u> claimants. <u>Id.</u> ("If the plaintiff fails to prosecute or to comply with these rules or a court order, <u>a defendant</u> may move to dismiss the action or any claim against it.") (emphasis added); <u>see also</u> <u>Societe Internationale Pour Paricipantions Industrielles Et Commerciales, S.A. v. Rogers</u>, 357 U.S. 197, 207 (1958) (noting that Rule 41 "is on its face appropriate only as <u>a defendant's</u> remedy") (emphasis added).[5]

The Court also notes that, although it may reasonably exercise its "inherent authority" to dismiss the Government's claim for failure to prosecute under Rule 41(b) in the appropriate circumstances, there would be no basis to do so here where Movants have failed to demonstrate that the facts of this case are so egregious as to warrant dismissal with prejudice under Rule 41(b). <u>Knoll v. City of Allentown</u>, 707 F.3d 406, 411 (3d Cir. 2013) (noting that dismissal for failure to prosecute "must be a sanction of last, not first, resort"); <u>Davis v. Williams</u>, 588 F.2d 69, 70 (4th Cir. 1978) ("A dismissal with prejudice is a harsh sanction which should not be invoked lightly in view of the sound public policy of deciding cases on their merits." (internal quotations omitted)); <u>McCargo v. Hedrick</u>, 545 F.2d 393, 396 (4th Cir. 1976) (noting that dismissal under Rule 41(b) "should be resorted to only in extreme cases"). To

---

[5] Although one court has noted that a claimant to defendant property in an <u>in rem</u> action is "most analogous to an <u>in personam</u> defendant," that same court declined to apply Rule 41(b) to the <u>in rem</u> action before it. <u>United States v. United States Currency in the Amount of Six Hundred Thousand Three Hundred Forty One Dollars and No Cents</u> ($600,341.00), 240 F.R.D. 59, 63 (E.D.N.Y. 2007).

the extent Movants raise other specific legal claims in their Motions to Dismiss, those claims can be evaluated without resort to Rule 41(b), as further set out below.

### (ii) Dismissal Based on Federal Rules of Civil Procedure 12(b)(5) and 4(m)

Movants next argue that the Court should dismiss the forfeiture actions for insufficient service of process. Rule 12(b)(5) of the Federal Rules of Civil Procedure permits the Court to dismiss due to insufficient service of process. Rule 4 details the requirements for service of process, including issuance of a summons, which must be issued "for each defendant to be served." Fed. Rule Civ. P. 4(b). Rule 4(m) provides for dismissal of a complaint without prejudice, or an order to make service, if a defendant is not served with the summons and complaint within the requisite time period. Fed. Rule Civ. P. 4(m). Under the plain language of Rule 4, service under this provision applies to defendants in a civil case, and would not apply to claimants in a civil forfeiture proceeding. The Government had no obligation to serve Movants with process under Rule 4. Therefore, Movants have failed to present a basis to dismiss the civil forfeiture actions pursuant to Rules 12(b)(5) or 4(m).

### (iii) Compliance with Supplemental Rule G

Movants also appear to raise the contention that the civil forfeiture proceedings should be dismissed based on the Government's alleged failure to comply with Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, which governs civil forfeiture actions in rem. Supplemental Rule G(4)(a)(i) mandates that a judgment of forfeiture may not be entered unless "the government has published notice of the action within a reasonable time after filing the complaint or at a time the court orders." Supp. Fed. R. Civ. P. G(4)(a)(i) (emphasis added). Additionally, the Government is required to give direct

notice of the forfeiture action to persons reasonably appearing to be a potential claimant no later than 30 days after final publication of newspaper or legal notice or no later than 60 days after the first day of publication on an official internet government forfeiture site. Supp. Fed. R. Civ. P. G(4)(b)(i), (5)(a)(ii)(B). However, "[a] potential claimant who had actual notice of a forfeiture action may not oppose or seek relief from forfeiture because of the government's failure to send the required notice." Supp. Fed. R. Civ. P. G(5)(b)(v); see also Dusenbury v. United States, 534 U.S. 161, 169 n.5 (2002).

In this case, the Government filed a Complaint for forfeiture of the real property on February 13, 2015. The Government also filed Notice of Lis Pendens on the same date. The Government provided a copy of the Complaint to Jessup's counsel at the time, and it does not appear that Movants are now seeking relief based on any alleged failure to comply with Rule G as to the real property forfeiture proceeding. Thus, any claim based on alleged failure to comply with Supplemental Rule G appears to apply exclusively to the personal property proceeding.

As noted above, on June 26, 2015, the Government filed a Complaint for forfeiture of certain personal property, including various bank accounts. On September 4, 2015, the Court notified the Government that it would require additional information with regard to tracing the source of funds for two accounts. The Government now asserts that, pursuant to that request, the agents gathered more evidence, which required additional tracing of funds. On November 10, 2015, the Government filed its Amended Complaint, and on November 13, 2015, this Court issued a Warrant for Arrest and Notice in Rem finding probable cause to

believe that the Defendant properties were subject to forfeiture as alleged in the Amended Complaint.

In the Forfeiture Warrant, this Court ordered publication of the forfeiture action "to the extent required by Rule G(4)," but without a specific time limitation for such publication. Supplemental Rule G(4)(a)(i) only requires publication of the forfeiture proceeding within a "reasonable" time after filing the forfeiture Complaint or as ordered by the Court. One hundred forty-one days passed between the filing of the initial forfeiture Complaint on June 26, 2015, and the issuance of the Forfeiture Warrant on November 13, 2015. However, as noted above, that period of time was based on the Court's review of the application, the additional investigation required, and the Amendment of the Complaint. Because the matter was pending with the Court and the Forfeiture Warrant had not issued, no notice or publication had been ordered. Therefore, any delay in sending notice of the proceeding at that time was reasonable. From the issuance of the Forfeiture Warrant on November 13, 2015 until April 5, 2016, when the Government published the forfeiture action on an official government website and sent Notice of the Complaint, Amendment to Complaint, and Warrant of Arrest in Rem to Movants' counsel, 145 days passed. Because Notice of the Complaint was sent within 60 days of the first publication on April 5, 2016, there was no violation of Supplemental Rule G(b)(i), which requires notice to be sent within 60 days of the first day of publication. Therefore, the remaining question is whether the 145-day delay in publishing notice of the forfeiture action after issuance of the Forfeiture Warrant, from November 13, 2015 to April 5, 2016, was unreasonable or in violation of the Court's order in the Forfeiture Warrant.

The Court notes that, although Supplemental Rule G does not give firm time limits to publish notice of a forfeiture action, other provisions of the Federal Rules of Civil Procedure may be instructive in determining what is reasonable. At the time that this action was initiated, Rule 4 of the Federal Rules of Civil Procedure gave parties 120 days to complete service of process after filing a complaint.[6] At the August 24, 2016 hearing, counsel for the Government noted that the 120-day time limit from Rule 4 was not directly incorporated into Supplemental Rule G, but using that time frame as general guidance, the Government normally publishes notice within 120 days of the issuance of the forfeiture warrant. In this case, the 145-day period between the issuance of the Forfeiture Warrant and the publication and Notice to Movants was 25 days longer than the usual 120-day time period, which counsel for the Government contends was the result of "the workload of the undersigned prosecutor during the first quarter of this year, and the government's complex, ongoing criminal investigation." (Resp. Br. at 27.) Movants contend that the delay was an intentional effort by the Government to obtain some type of tactical benefit. However, the Court finds no factual basis to support this contention. The evidence presented indicates that the Government voluntarily provided informal responses to status requests from Movants' counsel, but did not deliberately deceive or withhold information. To the extent that there was further discussion of seized assets in the fall of 2015, that discussion related to issues that had arisen regarding a specific account that involved an automated payroll deduction after the seizure, and the Court does not find any evidence of misrepresentation by the Government in those exchanges. There is also no

---

[6] Effective December 1, 2015, this was amended to 90 days. See Fed. R. Civ. P. 2015 Amendments.

evidence of any advantage to be gained by the Government and simply no basis to support such a contention.

Moreover, in considering a Motion to Dismiss for failure to provide notice as required by Rule G, the Court considers the degree of prejudice suffered by Movants in their ability to present their claims in the forfeiture proceeding. See United States v. 630 Ardmore Drive, 178 F. Supp. 2d 572, 579 (M.D.N.C. 2001) (concluding that dismissal for failure to follow the requisite notice provisions would only be appropriate if the claimant "suffered prejudice from not receiving a notice of the complaint"). Accordingly, in the instant case, this Court finds relevant in the Supplemental Rule G analysis that Movants have not shown that a lack of notice before April 5, 2016 prejudiced their ability to defend against a forfeiture action.

In conclusion, this Court finds that any delay in the filing of the Complaint, filing of the Amended Complaint, issuance of the Forfeiture Warrant, and publication of the forfeiture action with notice to Movants, would not appear to violate the notice provisions of Supplemental Rule G, and even if there were a violation of Rule G's notice provision, any such violation would not warrant dismissal of the forfeiture action as requested by Movants.

(iv) Fifth Amendment Due Process

In both the Motions for Return of Property and Motions to Dismiss, Movants assert that the Government has violated the Fifth Amendment Due Process Clause because of the

length of the delay between the seizure of the property in February 2015 and the date of filing of the Complaint in June 2015 and notice to Movants in April 2016.[7]

The due process concerns raised by inaction in a civil asset forfeiture case "mirror[] the concern of undue delay encompassed in the right to a speedy trial." United States v. Eight Thousand Eight Hundred and Fifty Dollars in United States Currency ($8,850), 461 U.S. 555, 564 (1983). Thus, courts balance the same factors when analyzing the impact of delay on a claimant's due process rights in a civil asset forfeiture case as when analyzing whether a given delay violates a criminal defendant's Sixth Amendment right to a speedy trial. Id. Specifically, courts are to balance the length of the delay, the reason for the delay, steps that the movant may have taken to assert his right, and prejudice to the movant. Id. The factors are to be balanced against one another, and no one factor is determinative. Id. at 565.[8]

Although the "overarching factor is the length of the delay," the determination of whether a delay is reasonable ultimately depends on a fact-intensive analysis; at no fixed point does a delay become presumptively improper. Id. Instead, "the length of the delay is to some extent a triggering mechanism" for the Court to engage in the remaining steps of the due

---

[7] Movants raise these constitutional arguments as part of the claims of alleged violations of Federal Rule of Criminal Procedure 41(g), Federal Rule of Civil Procedure 41(b), and Federal Rule of Civil Procedure Supplemental Rule G. To the extent that Plaintiffs are alleging a violation of these rules, the contentions are addressed in the prior sections as to each of those provisions. To the extent Movants raise due process contentions throughout their briefing, the Court considers the contentions together here.

[8] Although $8,850.00 only addressed the "narrow" issue of delay between seizure of property and filing a civil forfeiture complaint, "due process is flexible and calls for such procedural protections as the particular situations demands." Id.; see also United States v. $307,970.00, 156 F. Supp. 3d 708, 716 (E.D.N.C. 2016) ("Although $8,850.00 addresses only the 'narrow' issue of delay between seizure and filing, the 'flexible' due process principles articulated by the Court easily are expanded to cover situations in which the government unfairly delays a case from coming to trial."); United States v. Banco Cafetero de Panama, 797 F.2d 1154, 1163 (2d Cir. 1986) (applying the test from $8,850.00 to the delay between seizure and the holding of the forfeiture trial).

process inquiry.  Id. at 565 (quotations omitted).  When analyzing the length of the delay, courts are to consider two components.  First, "a reviewing court must decide whether the length of the delay triggers a speedy trial inquiry."  United States v. Hall, 551 F.3d 257, 271 (4th Cir. 2009).  Second, "a reviewing court must weigh 'the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim.'"  Id. (quoting Doggett v. United States, 505 U.S. 647, 652 (2012)).  In certain cases, an unjustified delay may be so short that it does not trigger a due process analysis.  United States v. $199,514.00 United States Currency, 681 F. Supp. 1109, 1111 (E.D.N.C. 1988).  In $8,850.00, the Supreme Court found that a delay of 18 months between the seizure of property and the initiation of a forfeiture suit to be "quite significant," therefore triggering a speedy trial inquiry.  $8,850.00, 461 U.S. at 565.

Here, Plaintiff seized the personal property in February 2015.  Movants received notice of the civil forfeiture proceeding against Defendant personal property 5 months after this Court issued the Forfeiture Warrant and 9.5 months after Plaintiff filed its Verified Complaint. The Court will assume that these periods are sufficient to trigger a speedy trial inquiry; however, the Court notes that these periods of delay are significantly shorter than those ultimately found reasonable in analogous cases.  See, e.g., $8,850.00, 461 U.S. at 569-70 (delay of 18 months between seizure of property and filing of a forfeiture complaint ultimately found reasonable);  $307,970.00, 156 F. Supp. 3d at 720 (finding no due process violation where defendant property had been seized four years prior and the case had not yet gone to trial).

Although the overarching factor in this analysis is the length of the delay, "[l]ength of delay, in and of itself, is almost meaningless.  Only unjustified delay raises a due process

concern . . . ." $199,514.00, 681 F. Supp. at 1111. A certain amount of delay is inherent in all civil forfeiture proceedings, and the Government must be allowed some time to decide whether to institute forfeiture proceedings. $8,850.00, 461 U.S. at 565. Additionally, the pendency of criminal proceedings presents a significant justification for a delay in instituting civil forfeiture proceedings. See id. at 566.

Here, Movants assert—with little substantive justification—that "the only explanation for the Government's delay in serving process is an attempt to buy time for an investigation that has gone no where [sic] . . . ." The history of the instant case, however, suggests that the Government has proceeded with enough due diligence to avoid a constitutional violation.[9] The Government filed a civil forfeiture action and a notice of Lis Pendens on the real property on February 13, 2015, and provided Jessup's counsel with a copy of the Complaint. The Government seized the personal property in February and March 2015 and then filed its initial Verified Complaint for forfeiture against Defendant personal property on June 26, 2015, less than 150 days after the property was seized. The Government then filed an Amended Complaint and Application for Warrant for Arrest of Personal Property four months later, on November 10, 2015. During this four-month period, the matter was pending with the Court, and the Government conducted additional investigation in support of the application for the Warrant for Arrest of Personal Property. In addition to gathering additional evidence in support of the forfeiture warrant, the Government contends that throughout the entire period

---

[9] As noted above, Movants assert that the Government intentionally misled Movants' attorneys as to the status of the forfeiture action, but after reviewing the communications between Government attorneys and counsel for Movants, this Court finds no merit to Movants' argument. Indeed, the evidence indicates that Government attorneys voluntarily provided information and status updates when requested. The Court concludes that, based on the evidence presented, there was no intentional misrepresentation by the Government at any stage of these proceedings.

it also continued its criminal investigation into GCT's billing practices. The Forfeiture Warrant was issued in November 2015 and notice was sent to Movants in April 2016, a period of 145 days. As noted above, the Government concedes that this was 25 days beyond the Government's usual 120-day time period, and the Government points to "the workload of the undersigned prosecutor during the first quarter of this year, and the government's complex, ongoing criminal investigation." This Court agrees with the Government that—in the circumstances presented here—this is not an unreasonable explanation for the limited delay at issue. Furthermore, when considering the length of the delay and the reason assigned for the delay together, the facts of this case stand in stark contrast to the cases cited by Movants in their brief. See, e.g., United States v. Sharp, 655 F. Supp. 1348, 1352 (W.D. Mo. 1987) (finding a due process violation where the government offered "no justification" for a 23-month delay between seizure and the filing of a forfeiture complaint).

The third factor that the Court considers in the due process analysis is whether the claimant asserted his right to a judicial hearing. If a claimant believes that the initial seizure of his property was improper, the claimant has the ability to file a motion under Federal Rules of Criminal Procedure 41(g). Here, Movants did nothing to challenge the seizure of the personal property until April 1, 2016, by filing Motions for Return of Property. Instead, counsel for Movants remained in contact with United States Attorneys assigned to the case with the apparent objective of working out a settlement agreement. Such tactical decisions by Movants should not be held against the Government. Because Movants did not file an equitable motion under Rule 41(g) until over one year had elapsed since the initial seizure of property, this factor weighs in favor the Government.

The final element in the due process analysis is whether the claimant has been prejudiced by the Government's delay in initiating civil forfeiture proceedings. "[W]ithout any prejudice there is no injury to the claimant. Without injury, due process violations at most would be technical ones that could be remedied by a nominal award of damages." $199,514.00, 681 F. Supp. at 1112. In considering prejudice, the primary inquiry is "whether the delay has hampered the claimant in presenting a defense on the merits, through, for example, the loss of witnesses or other important evidence." $8,850.00, 461 U.S. at 569. Movants make no argument that any of the alleged due process violations have hampered their ability to present a defense against the forfeiture action. Instead, Movants assert that they are "financially destitute" and that "the prejudice to them is obvious." However, Movants have not shown impairment of their ability to present a defense based on the delay in initiating the forfeiture proceedings or providing the requisite notice. Moreover, to the extent that the delay is based on the ongoing criminal investigation, Movants are in the same position they would have been in if the Government had provided notice immediately after filing suit, and then moved to stay the action.[10]

In conclusion, any delays in this case do not appear to be unjustified. Considering all of these factors together, it is apparent that no due process violation has occurred.

---

[10] The Court notes that as discussed during the hearing, with respect to the criminal investigation, the Government is continuing further investigation regarding Jessup's knowledge and intent in billing for ambulance services that the Government contends GCT did not and could not provide. However, the Government noted at the hearing that this is not a case of an alleged partial overpayment, where the Movants might be entitled to some portion of the funds for legitimate billings. Instead, the Government contends that there was no legitimate basis for any bill to Medicaid for the services provided by GCT, and thus there is no basis on which Jessup or GCT would be entitled to keep any of the $25 million paid by Medicaid to GCT.

C.      Plaintiff's Motion to Stay Proceedings

On July 27, 2016, the Government moved to stay discovery in these civil forfeiture proceedings pursuant to 18 U.S.C. § 981(g)(1).  The Government argued that "allowing civil discovery to go forward now would subject the government's ongoing criminal investigation to earlier and broader discovery than would otherwise be permissible in the criminal proceeding . . . ."  In response, Movants argued that the Government had made an insufficient showing that civil discovery would compromise the pending criminal investigation.

Upon motion by the Government, a court "shall stay" a civil forfeiture proceeding "if the court determines that civil discovery will adversely affect the ability of the Government to conduct a related criminal investigation or the prosecution of a related criminal case."  18 U.S.C. § 981(g)(1); see also United States v. Sum of $70,990,605, 4 F. Supp. 3d 209, 212 (D.D.C. 2014); United States v. Real Property and Premises, 657 F. Supp. 2d 1060, 1063 (D. Minn. 2009) (noting that Section 981(g)(1) requires the government to prove both that (1) discovery will adversely affect the pending criminal action, and (2) the criminal action is "related" to the forfeiture action).  Because Movants admit that the criminal investigation and civil proceedings are "related," and that there is "overlap" between "the parties, witnesses, facts and circumstances involved in the two proceedings," the only remaining inquiry for this Court is whether civil discovery will adversely affect the ability of the government to conduct its criminal investigation.  The Government is not required to make any "particularized showing of prejudice or specific harm; rather, all that the Court must determine is whether the civil discovery will interfere with the criminal investigation."  United States v. Real Prop. Located at 6415 N. Harrison Ave., No. 1:11CV304, 2012 WL 4364076, *3 (E.D. Cal. Sept. 21,

2012).  In appropriate cases, the Government may submit evidence *ex parte* in support of its motion to stay proceedings.  18 U.S.C. § 981(g)(5).  "In no case, however, shall the court impose a protective order as an alternative to a stay if the effect of such protective order would be to allow one party to pursue discovery while the other party is substantially unable to do so." 18 U.S.C. § 981(g)(3).

Here, the Government has made the requisite showing that further discovery will harm its ongoing criminal investigation.  Furthermore, in light of the evidence before the Court, crafting a protective order which guards against self-incrimination of the Movants while allowing the Government to adequately pursue a civil action would be impossible.  Because Movants are only targets of an ongoing criminal investigation but do not yet face criminal charges, they are not entitled to any criminal discovery.  If civil discovery were allowed to immediately proceed, Claimant could potentially seek the identity of all prosecution witnesses, depose those witnesses, and request investigative material that the Government need not reveal in criminal discovery, and would be able to obtain other investigative material pertinent to the criminal investigation prior to the deadlines for providing such discovery in the criminal case.  Requiring the Government to identify its witnesses before filing criminal charges could discourage those witnesses from continuing to cooperate in the criminal investigation and may interfere with the Government's ability to obtain confidential information from others.  Additionally, allowing civil discovery to proceed would likely result in the Government producing discovery materials while Movants invoke their Fifth Amendment right to remain silent rather than submit to interrogatories, invoking the type of one-sided discovery that § 981(g)(3) seeks to prevent.  Because the Government has made the requisite showing that

civil discovery at this stage would adversely affect the ongoing criminal investigation, and because of the practical difficulties of crafting a protective order that adequately protects the Government's interests as well as Movants' privilege against self-incrimination, the Court concluded that the Government's Motion to stay discovery should be allowed.

      D.     Movants' Motion to Lift Stay

      Movants have filed a Motion to Lift Stay, noting the additional passage of time since the hearing and the lack of any further showing from the Government justifying the continuation of the stay.  On this issue, the Court agrees that any stay in this case should not be indefinite, and that the Government must provide periodic justification for continuation of the stay, given the need to also consider and protect Movants' rights.  See United States v. $307,970.00, 156 F. Supp. 3d at 726-27.  Having considered the Motion to Lift Stay, the Court concludes that the matters should remain stayed, but that the Government should be required to file an updated status report within 10 days of this Order, setting out a sufficient basis for continuing the stay, and further filing a similar update every 90 days thereafter.[11]  Movants may file a renewed Motion to Lift Stay in response to any such filing, for further consideration by the Court.

III.    CONCLUSION

      IT IS THEREFORE RECOMMENDED that Movants' Motions for Return of Property in 1:15MJ32 to 1:15MJ38, 1:15MJ40 to 1:15MJ45, and 1:15MJ49 through 1:15MJ85 be DENIED, and that Movants' Motions to Dismiss in 1:15CV152 [Doc. #10] and

---

[11] As provided in 18 U.S.C. 981(g)(5), the Government may also provide an *ex parte* supplement supporting the request.

1:15CV506 [Doc. #9] be DENIED.   However, as noted during the hearing, Movants may elect to withdraw those Motions without prejudice rather than proceeding on the Recommendation at this time.

IT IS ORDERED that the Government's Motion to Stay Discovery Proceedings is GRANTED and Movants' Motion to Lift Stay is DENIED.  However, IT IS FURTHER ORDERED that the Government must provide an updated status report and basis for continuing the stay within 10 days of the date of this Order and every 90 days thereafter, and Movants may thereafter file a renewed Motion to Lift Stay if there are further matters for the Court's consideration.

This, the 18th day of January, 2017.

_____/s/ Joi Elizabeth Peake_____
United States Magistrate Judge